**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher Taylor Kubrick Soleto,<br>Plaintiff,<br>v.<br>AWP Gaming LLC, et al.,<br>Defendants. | No. CV-26-05208-PHX-MTL<br>**ORDER** |

Pending before the Court are Plaintiff's Application for Leave to Proceed In Forma Pauperis (Doc. 2), Motion for Authorization of Alternative Service of Process (Doc. 6), and Ex Parte Motion for Temporary Restraining Order (Doc. 13).

## I. BACKGROUND

The following factual account is taken from *pro se* Plaintiff Christopher-Taylor Kubrick Sotelo's corrected First Amended Complaint (Doc. 16), which the Court construes as superseding Plaintiff's original First Amended Complaint (Doc. 11) for the reasons stated in Plaintiff's Notice of Filing Amended Pleading (Doc. 15).

This case arises from two sloppily drafted contracts. The first contract, titled "Roblox Game Development Contract," was executed on April 15, 2021. (Doc. 16 at 65.) The agreement provides that Defendant AWP Gaming LLC would "develop a Roblox mobile gaming app" in exchange for $500 from Plaintiff. (*Id.*) Plaintiff paid AWP Gaming LLC the $500, but "[n]o performance was ever delivered under this contract." (*Id.* at 11.)

The second contract, titled "Aliees Master Agreement," was executed on January

21, 2022. (*Id.* at 59-63.) The agreement contains contradictory terms. Under the agreement, Plaintiff would pay $10,000 to AWP Gaming LLC. (*Id.* at 60.) In exchange, AWP Gaming LLC would sell Plaintiff a bundle of Aliees brand non-fungible tokens ("NFTs") and 300,000 cryptocurrency tokens.* (*Id.*) AWP Gaming LLC would then "be 100% responsible for listing the NFTs on Open Sea," an online NFT and cryptocurrency exchange. (*Id.*) The contract represents that AWP Gaming LLC would provide Plaintiff with a "wire transfer [of] 80% of the sale of NFTs," while simultaneously stating that AWP Gaming LLC's "goal" would be to auction off the NFTs with a "40% pay out . . . equal to the amount of $1,600,000." (*Id.*) If AWP Gaming LLC was unable to sell the NFTs, it would provide Plaintiff with 5000 Aliees tokens for each unsellable NFT. (*Id.*) The agreement lists, "Royalties: 5%," but later states that "20% will serve as a royalty." (*Id.*)

Plaintiff paid AWP Gaming LLC $10,000 pursuant to the second contract. (*Id.* at 11.) Plaintiff received 300,027 tokens, but Plaintiff alleges that Defendants "engineered these tokens to be permanently illiquid and worthless." (*Id.* at 11-12.) "[N]o NFTs were sold and no proceed were ever paid," and Plaintiff never received the tokens that he was promised in the event that the NFTs were never successfully auctioned off. (*Id.* at 12.)

In September 2025, Plaintiff posted "consumer reviews and filed a [Better Business Bureau ("BBB")] complaint." (*Id.* at 17.) In a text message, Defendant Michael Miller, sales manager of Defendant AWP Gaming Studios LLC, suggested that payment to Plaintiff under the contracts was conditioned on removing the reviews. (*Id.* at 18, 116.) "Defendants offered Plaintiff $1,000 followed by . . . weekly $500 payments in exchange for removal of Plaintiff's Google review." (*Id.* at 17.) Plaintiff took down the Google review and received $1,000, but no weekly payments, so Plaintiff reposted his review. (*Id.*) Defendants then offered the same payments with respect to Plaintiff's BBB complaint. (*Id.*) Plaintiff had the complaint placed on a "visibility hold." (*Id.*) Defendants paid Plaintiff $1,000, then $2,500 in total during subsequent weeks. (*Id.*)

* NFTs are unique digital records stored on a blockchain that represent ownership of a specific digital or physical asset. Cryptocurrency tokens are fungible units of value recorded on a blockchain, which may be traded on online exchanges.

Plaintiff first pursued legal action in arbitration on May 13, 2026, before the American Arbitration Association ("AAA"). (*Id.* at 20.) "[T]he AAA confirmed that it had not received the required Consumer Due Process Protocol waiver and fees from the business Defendants, that it was declining to administer the case, and that it had closed its file." (*Id.* at 20-21.) The AAA indicated that Plaintiff may proceed in court. (*Id.* at 21.)

Plaintiff filed suit in this Court on July 24, 2026, proceeding *pro se*. (Doc. 1.) Plaintiff originally alleged ten counts against fourteen Defendants, in addition to fictitious defendants. (*Id.*) The entities named as Defendants include AWP Gaming LLC, AWP Gaming Studios LLC, Tantcious App Development LLC, Affiliate Web Partners LLC, Game App Enterprises LLC, CNC Luxury Transportation LLC, and Elite Consultants LLC. (*Id.* at 4.) The individuals named as Defendants include Christopher Michael Maxon, Selena Tellez, Michael Miller, Chris Page, Stephen Doe, Vanessa Marie Gomez, and Laura Maxon. (*Id.* at 4-5.) Plaintiff alleged ten counts: conspiracy to conduct the affairs of an enterprise through a pattern of racketeering in violation of the RICO Act, 18 U.S.C. § 1962 (Count I), and in violation of Arizona's racketeering statute, Arizona Revised Statutes § 13-2314.04 (Count II); fraud in the inducement (Count III); breach of contract (Count IV); unjust enrichment (Count V); economic coercion and review suppression (Count VI); alter ego liability (Count VII); conversion (Count VIII); intentional infliction of emotional distress (Count IX); and permanent injunctive relief (Count X).

Along with his Complaint, Plaintiff filed an Application for Leave to Proceed In Forma Pauperis (Doc. 2), Ex Parte Motion for Temporary Restraining Order (Doc. 3), and Motion for Authorization of Alternative Service of Process (Doc. 6). The Court denied Plaintiff's Ex Parte Motion for Temporary Restraining Order. (Doc. 9.)

Plaintiff filed the First Amended Complaint ("FAC") (Doc. 16), alleging an additional claim for constructive trust (Count XI). Plaintiff also filed a Renewed Ex Parte Motion for Temporary Restraining Order, explaining that because of the addition of the constructive trust claim, the basis for the Court's original denial of preliminary injunctive relief is no longer a basis for denying such relief now. (Doc. 13.)

## II. NOTICES AND SUPPLEMENTS

Plaintiff has filed a Notice of Supplemental Authority and Clarification of Relief Requested (Doc. 10) and Supplemental Memorandum in Support of Ex Parte Motion for Temporary Restraining Order (Doc. 18). The notice does not fall within the limited categories of notices authorized or required to be filed by the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(d), 5.1, 6(c), 30, 31, 41, 44.1, 45, 62.1, 67, 68, 71.1; LRCiv 1.1(b), 3.1(c), 3.6, 3.7(a)(2), 5.2, 5.6(d), 15.1(b), 40.2, 67.1, 77.4, 83.3(b), 83.3(d), 83.3(f). Nor does the notice request relief such that it could be construed as a motion. *See* LRCiv 7.1, 7.2. Filing of this notice risks legitimate filings that request relief being overlooked and wastes time and resources. The Notice (Doc. 10) will therefore be stricken. The Court will also strike the uninvited supplemental filing (Doc. 18) because Plaintiff unilaterally filed the supplement without requesting leave from the Court. *See Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1038-39 (N.D. Cal. 2004) (striking a supplemental brief filed without leave of the court).

## III. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff's application indicates that he has insufficient funds to prepay the filing fee for this action. Accordingly, the Court will grant the application (Doc. 2).

## IV. SCREENING PER 28 U.S.C. § 1915(e)(2)

The Court may screen complaints brought *in forma pauperis*. 28 U.S.C. § 1915(e)(2). The Court must dismiss an action if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B). The Court will screen Plaintiff's FAC (Doc. 16).

### A. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Further, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation modified). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a claim, a court must assess whether there are other "more likely" explanations for a defendant's conduct. *Id.* at 681.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (directing courts to "continue to construe *pro se* filings liberally"). If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See *Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

**B. Defendants**

A plaintiff must give each defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Throughout the FAC, Plaintiff deploys the collective term "Defendants" to attribute wrongful conduct to all fourteen Defendants. The FAC is defective insofar as it employs this improper group pleading. Other than their purported job title or association with other Defendants, Plaintiff does not plead specific allegations of misconduct against Defendants AWP Gaming Studios LLC, Game App

Enterprises LLC, Elite Consultants LLC, Tantcious App Development LLC, CNC Luxury Transportation LLC, Affiliate Web Partners, Selena Tellez, Chris Page, Stephen Doe, Vanessa Marie Gomez, and Laura Maxon. (*See generally* Doc. 16.) The Court will dismiss these Defendants because the FAC fails to state a claim against them.

Moreover, Plaintiff improperly names fictitious Defendants, John Does 1-50. (Doc. 16 at 9.) "There is no provision in the Federal Statutes or Federal Rules of Civil Procedure for use of fictitious parties." *Fifty Assocs. v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1191 (9th Cir. 1970) (citation omitted). The Court will therefore dismiss all fictious Defendants from this suit.

**C. Claims**

Plaintiff does not specify which Defendants each of his eleven counts are brought against, so the Court construes each claim as asserted against all Defendants. For the reasons stated below, the Court will allow Plaintiff to proceed only on the following claims: breach of contract against AWP Gaming LLC only (Count IV); unjust enrichment against AWP Gaming LLC only (Count V); and conversion against AWP Gaming LLC only (Count VIII). Although the Court will dismiss Plaintiff's claim for alter ego liability (Count VII) insofar as it is plead as a standalone cause of action, Plaintiff may proceed on his claim as a derivative theory as to his other claims, but only to the extent he asserts that AWP Gaming LLC is the alter ego of Mr. Maxon. The Court will dismiss Plaintiff's claims for injunctive relief (Count X) and a constructive trust (Count XI) because they are pleaded as causes of action, but Plaintiff may pursue these claims as remedies.

**1. Racketeering Claims (Counts I and II)**

Plaintiff raises three claims for racketeering in violation 18 U.S.C. §§ 1962(c) and (d) of the federal RICO statute (Count I), and Arizona's racketeering statute, A.R.S. § 13-2314.04 (Count II).

To plead a violation of § 1962(c) for a federal RICO, "plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001)

(citation modified). Arizona's racketeering statute creates a private right of action for "[a] person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity . . . involving a pattern of racketeering activity." A.R.S. § 13-2314.04(A).

Federal § 1962(c) RICO and Arizona racketeering claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard insofar as the alleged predicate act includes an element of fraud. *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1172-73 (E.D. Cal. 2017) (citing *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003), overruled on other grounds by, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc)). Arizona's racketeering statute specifically states that pleadings that include an allegation of fraud or coercion must "state these circumstances with particularity with respect to *each* defendant." A.R.S. § 13-2314.04(R) (emphasis added). As to his federal §1962(c) claim, Plaintiff pleads wire fraud and money laundering as predicate offenses, which are both subject to the heightened pleading standard. *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1172-73; *see also Desoto v. Condon*, SA CV 08-514 AHS (MLGx), 2008 WL 11338151, at *10 ("Courts have held that allegations of money laundering must satisfy Rule 9(b)'s requirements because money laundering involves an element of fraud."). As to his state claim, the FAC contains the following predicate offenses: theft by fraud, extortion, computer fraud, and money laundering. Plaintiff's allegations concerning theft by fraud, computer fraud, and money laundering must meet Rule 9(b)'s heightened pleading standard, while his extortion claim is subject to Rule 8. *Id.*

Under federal and state law, Plaintiff must do more than allege an act constituting an offense; he must allege at least two acts such that Defendants engaged in a "pattern of racketeering activity." *See* 18 U.S.C. § 1961(5); A.R.S. § 13-2314.04(A). To plead a pattern of racketeering activity, a plaintiff must "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). Predicates are related

if they "'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at 240 (quoting 18 U.S.C. § 3575(e)). Continuity is demonstrated if the illegal conduct poses a threat of continued criminal activity, such as when the illegal conduct is "a regular way of conducting [a] defendant's ongoing legitimate business." *Id.* at 243.

Plaintiff does not adequately allege a pattern of racketeering activity. It is insufficient to plead that Defendants committed several predicate offenses, when every particularized allegation stems from a single episode involving a single victim. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (citing *Medallion Television Enters., Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir. 1987), *cert. denied*, 492 U.S. 917 (1989) (holding that Plaintiff did not adequately allege a pattern of racketeering because, "although [Plaintiff] allege[d] a number of 'acts,' [Defendant]'s collective conduct [was] in a sense a single episode having the singular purpose of impoverishing [Plaintiff]"). Plaintiff does just that. With respect to his claim that Defendants committed fraud—wire fraud as to his federal claim and theft by fraud and computer fraud as to his state claim—the FAC primarily discusses alleged fraudulent involving the Aliees Master Agreement and communications that followed. (Doc. 16 at 22-28.) In addition to the allegations of fraud concerning the Aliees Master Agreement, Plaintiff advances the bare allegation that Defendants engaged in "a course of dealing that continued after this specific fraud was complete." (*Id.* at 22.) In support of this allegation, Plaintiff points only to a press release issued in September 2025 by AWP Gaming Studios LLC, marketing a new cryptocurrency token and "promis[ing] . . . passive income and generational wealth" and a "recent BBB complaint documents a victim pressured in May 2025 to invest $10,600 in the Okra Token after being promised passive income." (*Id.* at 14-15, 22-23.) These generalized, secondhand allegations regarding an unidentified third-party victim fall well short of Rule 9(b)'s particularly requirement. Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake."); *see also Kearns v.*

*Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) (stating that, under Rule 9(b), a complaint must state the "who, what, when, where, and how of the misconduct charged").

Plaintiff's money laundering and extortion allegations do not constitute a second predicate act that establishes continuity. To be guilty of money laundering under federal or Arizona law, a defendant must knowingly engage in a transaction that conceals criminal proceeds. *See* 18 U.S.C. § 1956; A.R.S. § 13-2317. Plaintiff's money laundering allegations generically refer to the "[t]ransfer of fraud proceeds through [a] nineteen-wallet enterprise network," (Doc. 16 at 24), but without particular allegations of fraud other than the fraud stemming from the Aliees Master Agreement, the Court concludes that the money laundering allegations are part of the singular fraud episode associated with the Aliees Master Agreement. The same is true of Plaintiff's allegation that Defendants committed the predicate offense of extortion, which consists of allegations that Defendants threatened not to make the required payment under the Aliees Master Agreement unless Plaintiff removed online negative reviews levied against Defendants. (*Id.* at 28, 33.) Plaintiff's extortion allegations are confined to the same episode associated with the Aliees Master Agreement. Because Plaintiff's money laundering and extortion allegations are part of the same occurrence as his underlying fraud allegations, rather than independent predicate acts demonstrating continuity, the Court finds that Plaintiff has not stated a "pattern of racketeering activity" under federal or Arizona law. *See Sever*, 978 F.2d at 1535.

As an additional claim, Plaintiff purports to assert a conspiracy claim under the federal RICO statute, 18 U.S.C. § 1962(d). (Doc.16 at 27-28.) To state a RICO conspiracy claim, a plaintiff must plausibly allege Defendants were "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). Plaintiff has not stated a RICO conspiracy claim because he does not advance particularized enough allegations to establish Defendants' awareness of the enterprise and intention to participate in it. Furthermore, "Plaintiff[] cannot claim that a conspiracy to violate RICO existed if [he] do[es] not adequately plead a substantive

violation of RICO." *Howard v. AM. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

The Court will therefore dismiss Plaintiff's racketeering claims (Counts I and II).

**2. Fraud in the Inducement (Count III)**

Plaintiff brings a claim against Defendants for fraudulently inducing him to enter the Aliees Master Agreement and the Roblox Development Contract. (Doc. 16 at 29-30.) Plaintiff's fraud claim is subject to the heightened pleading standard imposed by Rule 9(b). *See United States v. Corinthian Coll.s*, 655 F.3d 984, 991-92 (9th Cir. 2011). The Court finds that Arizona has the most significant relationship to both the occurrence and the parties, so the Court will apply Arizona substantive law with respect to this claim. *See Stutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) ("Under Arizona law, courts are required to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular questions.") (citation modified). A claim of fraudulent inducement requires proof of these elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; [and] (9) the hearer's consequent and proximate injury.

*Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291-92 (App. 2010).

Plaintiff pleads that "Defendants made the following material misrepresentations[:]" (1) the tokens received under the contract would be exchangeable, (2) "a minimum auction payout of $1,600,000 was warranted," (3) "the 300,027 initial tokens delivered at contract inception had real cash exchange value," (4) "965,000 additional tokens would be delivered as a fallback," and (5) "the services contracted for under the Roblox Development Contract would be performed." (Doc. 16 at 29.) These alleged misrepresentations consist of nothing more than the terms of the contracts Plaintiff claims were never performed. (*Id.* at 60, 65.) A promise broken is not, without more, fraud.

*See Pinnacle Peak Developers v. TRW Inv. Corp.* 129 Ariz. 385, 388-89 (App. 1980) (holding that the nonperformance of a contract alone is insufficient to infer fraudulent intent); *see also McAlister v. Citibank (Ariz.)*, 171 Ariz. 207, 214 (App. 1992) (stating that an intent not to perform "must be established independent of a showing of the defendant's failure to perform").

Plaintiff does not adequately plead his fraud in the inducement claim (Count III), so the Court will dismiss it.

**3. Breach of Contract (Count IV)**

Plaintiff brings a breach of contract claim based on Defendants' nonperformance of any of their obligations under the Roblox Game Development Contract and the Aliees Master Agreement. (Doc. 16 at 30-32.)

For contract claims, Arizona courts adopt the Restatement (Second) of Conflict of Laws. *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 208 (1992). Section 187 of the Restatement states that parties' choice of law controls, "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Restatement (Second) of Conflict of Laws* § 187 (1971). The contracts underlying the Plaintiff's claims assert different choices of law. The Roblox Game Development Contract designates that California law applies. (Doc. 16 at 67.) The Aliees Master Agreement states that Arizona law applies. (*Id.* at 62.) The Court finds that both choice-of-law provisions govern, and that the designated laws will control with respect to both contracts.

**a. Roblox Game Development Contract**

Under California law, to state a breach of contract claim with respect to the Roblox Game Development Contract, Plaintiff must allege: "'(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" *Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). The Court finds that Plaintiff has adequately pleaded these elements with respect to the Roblox Game

Development Contract, but only as to AWP Gaming LLC.

Plaintiff alleges that the Roblox Game Development Contract "was executed by AWP Gaming LLC" and that Christopher Maxon signed the contract as agent of AWP Gaming LLC. (Doc. 16 at 7-8.) Under California law, "[i]t is, of course, the general rule that one may not sue upon a contract unless he is a party to that contract." *Watson v. Aced*, 156 Cal. App. 2d 87, 91 (1957). And an individual agent does not become a party to an agreement merely by signing on behalf of a company which is a party. *Benasra v. Marciano*, 92 Cal. App. 4th 987, 992 (2001). Because Plaintiff alleges that only AWP Gaming LLC executed the Roblox Game Development Contract, Plaintiff may proceed with his breach of contract claim as to this contract only against AWP Gaming LLC.

**b. Aliees Master Agreement**

The same is true for the portion of Plaintiff's breach of contract claim that concerns the alleged breach of the Aliees Master Agreement. The Court finds that, under Arizona law, Plaintiff has adequately pleaded the elements for breach of contract, that: "(1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 234 Ariz. 125, 140 (App. 2014) (citing *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs.*, 5 Ariz. App. 48, 50 (1967)). However, Plaintiff pleads that the Aliees Master Agreement was executed by AWP Gaming LLC, and Christopher Maxon's signature as agent for AWP Gaming LLC. (Doc. 16 at 8, 59, 63.) And like California law, Arizona law maintains a "longstanding general rule that only parties to a contract are subject to or may enforce its terms." *Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507, 510 (App. 2016) (citing *Lofts at Fillmore Condo. Ass'n v. Reliance Com. Constr. Inc.*, 218 Ariz. 574, 575 (2008)); *see also Ferrarell v. Robinson*, 11 Ariz. App. 473, 475 (1970) ("One who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement and thus incurs no personal liability for the principal's breach of that agreement."). Plaintiff may proceed with his breach of contract claim as to the Aliees Master Agreement only against AWP Gaming LLC.

**4. Unjust Enrichment (Count V)**

Plaintiff alleges an unjust enrichment claim, generally alleging that "Defendants have been unjustly enriched" by retaining Plaintiff's payment and not performing under the contracts. (Doc. 16 at 32.) The Court finds that Arizona has the most significant relationship to the occurrence and parties, so it will apply Arizona law to this claim. *See Bates v. Superior Court*, 156 Ariz. 46, 48 (Ariz. 1988) (providing that Arizona follows the Restatement (Second) of Conflict of Laws); *Restatement (Second) of Conflict of Laws* § 221 (stating that the law of the state that "has the most significant relationship to the occurrence and the parties" governs restitution claims). Under Arizona law, "[i]n order to establish a claim for unjust enrichment, a plaintiff must show that, (1) it conferred a benefit upon defendant, (2) defendant's benefit is at plaintiff's expense, and (3) it would be unjust to allow defendant to keep the benefit." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1025 (D. Ariz. 2003) (citing *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53 (1985)). Although unjust enrichment is only available when "the plaintiff has conferred a benefit upon the defendant in reliance upon an agreement which is unenforceable," Dan. B. Dobbs, *Law of Remedies* § 13.2(2) at 519 (2d ed. 1993), a plaintiff may "plead unjust enrichment as an alternative theory of relief" while the existence of a contract is still in dispute, *Hummel v. Rushmore Loan Mgmt. LLC*, No. CV-17-08034-PCT-DGC, 2017 WL 6554884, at *4 (D. Ariz. Dec. 22, 2017).

The FAC advances only the general allegation that "Defendants have been unjustly enriched," but elsewhere indicates that Plaintiff paid only the entity AWP Gaming LLC, pursuant to the two contracts. (*See* Doc. 16 at 11, 59-68.) So while the Court finds that Plaintiff has pleaded enough facts to sustain an unjust enrichment claim, the Court finds that Plaintiff may only proceed with his unjust enrichment claim against AWP Gaming LLC.

### 5. Economic Coercion and Review Suppression (Count VI)

Under Count VI, Plaintiff asserts a claim for economic coercion and review suppression. (Doc. 16 at 33.) The claim is brought pursuant to the Consumer Review Fairness Act, 15 U.S.C. § 45(b), and Arizona's theft by extortion statute, A.R.S. § 13-1804.

(*Id.*) Neither of those statutes provide a private cause of action. (*See id.* (acknowledging that "the CRFA is enforced principally by the Federal Trade Commission and state attorney generals")); *Phx. Baptist Hosp. & Med. Ctr. V. Aiken*, 179 Ariz. 289, 294 (App. 1994) ("The general rule is that no private cause of action should be inferred based on a criminal statute where there is no indication whatsoever that the legislature intended to protect any special group by creating a private cause of action by a member of that group.") (citation modified). Because there is no private right of action to bring this claim, the Court will dismiss it. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming the dismissal of claims brought under criminal statutes that do not impose civil liability).

**6. Alter Ego Liability (Count VII)**

Plaintiff asserts alter ego liability under Count VII. (Doc. 16 at 33-34.) Plaintiff asserts that "[a]ll Defendants are jointly and severally liable for all damages." (*Id.* at 34.)

The Court first notes that Plaintiff improperly asserts alter ego liability as an independent cause of action. *See Farmers Ins. Co. of Ariz. v. DNS Auto Glass Shop LLC*, No. CV-21-01390-PHX-DGC, 2022 WL 845191, at *2 (D. Ariz. March 22, 2022) (citing *Specialty Cos. Grp., LLC v. Meritage Homes of Ariz., Inc.*, 251 Ariz. 365 (2021)) ("[A]lter ego is not a standalone claim, but rather a derivative claim tied to some other substantive cause of action."); *see also Hennessey's Tavern, Inc. v. American Air Filter Co.*, 204 Cal. App. 3d 1351, 1359 (1988).

The Court analyzes Plaintiff's alter ego theory under both Arizona and California law, since Plaintiff's other claims are brought under both states' laws. Under both Arizona and California law, "[t]o establish an alter ego theory of liability, Plaintiff must allege: (1) there is unity of control and interest between [the company and individual] such that one is the 'alter ego' of the other, and (2) observing the corporate form's privileges and protections would be unjust." *Wolf Designs LLC v Five 18 Designs LLC*, 635 F. Supp. 3d 787, 801-02 (D. Ariz. 2022) (citing *Specialty Cos. Grp.*, 251 Ariz. at 367; *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)); *see also Leek v. Cooper*,

194 Cal. App. 4th 399, 415 (App. 2011) (holding that, under California law, a plaintiff "must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor"). "With respect to the first element, unity of interest, relevant factors include commingling of personal and corporate funds and assets, diversion of corporate assets or funds to personal use, treatment of corporate assets as personal assets, sole ownership of the corporation by one individual, absence of corporate assets, gross undercapitalization, and disregard of corporate formalities." *MacDonald v. Arazm*, 2018 WL 286354, at *10 (Cal. App. 2018) (citing *Leek*, 194 Cal. App. 4th at 417-18); *see also Solie v. Health Care@Home LLC*, No. CV-19-05399-PHX-JJT, 2020 WL 1821257, at *4 (D. Ariz. Apr. 10, 2020) ("Relevant factors to consider in determining the existence of an alter ego relationship include payment of salaries and expenses by the owner, an owners' making of interest-free loans to the corporation, commingling of personal and corporate funds, diversion of corporate property for personal use, and the observance of formalities at corporate meetings, among others.") (citation modified).

Plaintiff alleges the following facts as supporting his theory of alter ego liability: (1) the entity Defendants' sharing of an address; (2) "Christopher Maxon as common principal and signatory across the entities," including using the same signature across contracts; (3) the Roblox Game Development Contract "directing 30 percent of profits to Tantcious App Development . . . and referencing Affiliate Web Partners"; (4) "the same Master Wallet serving as organizational control hub for the token contracts"; (5) an entity Defendant going inactive while another remains active at the same address; and (6) a state court judgment obtained against Mr. Maxon individually and the entity Defendants for the same conduct. (Doc. 16 at 33-34.)

Taken together, Plaintiff's allegations plausibly show the unity of control and interest necessary to disregard the corporate form as to Mr. Maxon. He is alleged to be the principal of the entities, including the entity that executed both contracts, and he is alleged elsewhere in the FAC to have "sole authority over the . . . token contracts through the Master Wallet." (*Id.* at 8, 34.) Under the relevant factors, these indicate that Plaintiff states

a colorable alter ego theory as to Mr. Maxon. However, the remaining allegations do not establish unity of interest among the entity Defendants. On this record, the Court finds that the sharing of a common address among entities and the existence of a third-party beneficiary to a contract are insufficient alone to establish alter ego liability.

Because alter ego liability is not properly plead as an independent cause of action, the Court will dismiss this count, but Plaintiff may proceed on this derivative theory of liability with respect to his other claims as to Mr. Maxon only.

**7. Conversion (Count VIII)**

Plaintiff asserts a claim for conversion based on "Defendants intentionally exercis[ing] dominion and control over Plaintiff's $10,500 payment." (Doc. 16 at 35.) The Court finds that Arizona has the most significant relationship to both the occurrence and the parties, so the Court will apply Arizona substantive law with respect to this claim. *See Stutter Home Winery*, 971 F.2d at 407 ("Under Arizona law, courts are required to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular questions.") (citation modified). Conversion is the "act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143 (App. 2004) (citation omitted).

The FAC advances only the general allegation that "Defendants intentionally exercised dominion and control over Plaintiff's $10,500 payment," (Doc. 16 at 35), but elsewhere indicates that Plaintiff paid only the entity AWP Gaming LLC, pursuant to the two contracts. (*See id.* at 11, 59-68.) The Court finds that Plaintiff may proceed with his conversion claim, but only against AWP Gaming LLC, since particularized allegations are not levied against other Defendants.

**8. Intentional Infliction of Emotional Distress (Count IX)**

Plaintiff raises a claim for intentional infliction of emotional distress. (Doc. 16 at 35.) As to this claim, the Court finds that Arizona has the most significant relationship to both the occurrence and the parties, so the Court will apply Arizona substantive law with

respect to this claim. *See Stutter Home Winery*, 971 F.2d at 407 ("Under Arizona law, courts are required to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular questions.") (citation modified). To sustain a claim for intentional infliction of emotional distress in Arizona, a plaintiff must allege three elements: "[1] the conduct of the defendant must be extreme and outrageous; [2] the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and [3] severe emotional distress must indeed occur as a result of defendant's conduct." *Johnson v. McDonald*, 197 Ariz. 155, 160 (1995) (citing *Ford v. Revlon*, 153 Ariz. 38, 43 (1987)).

The FAC nakedly asserts that "withholding contractual performance for over four years, delivering worthless tokens, conditioning payment on suppression of reviews while Plaintiff undergoes cancer treatment, and actively dissipating assets after receiving [an] arbitration notice . . . constitutes extreme and outrageous conduct." (Doc. 16 at 35.) Plaintiff does not plead the second factor required to state a claim for intentional infliction of emotional distress, an intent to cause emotional distress or a reckless disregard of such distress, so the claim must fail. Moreover, the Court finds that the purported nonperformance of these contractual obligations does not amount to the sort of extreme and outrageous conduct that can sustain a claim for intentional infliction of emotional distress. *See Cluff v. Farmers Ins. Exchange*, 10 Ariz. App. 560, 562 (1969) (quoting *Restatement (Second) of Torts* § 46 cmt. d) (stating that a plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community").

The Court will therefore dismiss Plaintiff's claim for intentional infliction of emotional distress (Count IX).

**9. Injunctive Relief and Constructive Trust (Counts X and XI)**

Plaintiff's final counts are asserted as requests for permanent injunctive relief and a

constructive trust. (Doc. 16 at 35-37.) Under Arizona and California law, a claim for injunctive relief is not a standalone cause of action. *See Adelman v. Rheem Mfg. Co.*, No. 2:15-cv-00190 JWS, 2015 WL 4874412, at *8 (D. Ariz. Aug. 14, 2015) ("[A] claim for 'injunctive relief,' standing alone, is not a cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action") (citation omitted). Nor is a claim for a constructive trust. *See, e.g. Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1073 (C.D. Cal. 2010) ("Constructive trust is a remedy, not a cause of action."); *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1133 (D. Ariz. 2006) ("The Court construes the Plaintiff's reference to a constructive trust as a request for a particular remedy, not a separate cause of action.").

Insofar as Plaintiff asserts permanent injunctive relief and a constructive trust as independent causes of action (Counts X and XI), the Court will dismiss the requests. But Plaintiff may seek an injunction and constructive trust as remedies for his remaining causes of action.

**D. Leave to Amend**

Where a district court dismisses claims or defendants, it should generally provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a)(2). The Court, however, "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on [the] part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). In sum, leave to amend "is properly denied [where] amendment would be futile." *Carrico v. City & Cty. Of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

The deficient claims and Defendants identified above will be dismissed without

prejudice, and the Court will not grant Plaintiff leave to further amend his FAC. Plaintiff has already filed an amended pleading. Accordingly, the Court finds that affording Plaintiff another opportunity to amend his complaint would be futile.

**V. MOTION FOR TEMPORARY RESTRAINING ORDER**

Along with the FAC, Plaintiff filed a Renewed Motion for Temporary Restraining Order, requesting that this Court issue a temporary restraining order and authorize expedited discovery. (Doc. 13.) Plaintiff requests an order freezing "any assets held in or traceable to the nineteen identified enterprise wallet addresses set forth in the First Amended Complaint, up to an amount not exceeding Plaintiff's proven damages, consistent with the constructive claim set forth in Count XI." (*Id.* at 11.) Plaintiff's original request for this relief was denied by this Court on the basis that "a district court has 'no authority to issue a preliminary injunction preventing [the disposition] of . . . assets pending adjudication of [a] contract claim for money damages.'" (Doc. 9 at 2 (quoting *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fd., Inc.*, 527 U.S. 308, 333 (1999)).) In light of the Court's denial, Plaintiff amended his complaint to add Count XI, in which Plaintiff asks the Court to impose a constructive trust over proceeds received by Defendants from their "fraudulent conduct . . . to ensure that those specific, traceable proceeds are preserved for and restored to Plaintiff." (Doc. 16 at 36.) As Plaintiff correctly points out, his seeking of equitable relief through a constructive trust remedy ostensibly makes *Grupo Mexicano* inapplicable. *See Johnson v. Couturier*, 572 F.3d 1067, 1083-84 (9th Cir. 2009). That, however, means that preliminary injunctive relief that freezes assets is available only to the extent that Plaintiff has adequately pled an underlying claim for a constructive trust or other equitable relief.

To grant a temporary restraining order, the Court must consider the factors outlined in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (holding that the standard for issuing a temporary restraining order is the same as that for a preliminary injunction). Namely, a plaintiff must demonstrate "[1] that he is likely to

succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. To obtain a TRO without notice, the movant must provide "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A).

Plaintiff has not demonstrated that he is likely to succeed on his claim for a constructive trust or any other equitable relief, meaning that *Grupo Mexicano* still bars his request for preliminary injunctive relief. 527 U.S. at 333. "A constructive trust is an equitable remedial device that may be utilized whenever title to property has been obtained through actual fraud . . . or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest." *Linderoth Assocs., Architects Inc. v. Amberwood Dev., Inc.,* No. 06-0426-PHX-NVW, 2006 WL 8440851, at *3 (D. Ariz. Dec. 19, 2006) (citation modified). "It removes title from the legal owner and conveys that interest to one to whom it justly belongs." *In re Allied Gen. Agency*, 229 B.R. 190, 195-96 (D. Ariz. 1998) (citing *Arm, Inc. v. Terrazas*, 24 Ariz. App. 441, 443 (1975)). "A prerequisite to the imposition of a constructive trust is the identification of a specific property belonging to the claimant." *Linderoth*, 2006 WL 8440851, at *3 (citation omitted). Courts require the party seeking a constructive trust to trace his specific interest in the assets, meaning that Plaintiff must show that the property currently held by Defendants is the same property that was wrongfully taken. *See Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 286 (1985) (en banc).

Plaintiff asks this Court to freeze "any assets held in or traceable to [Defendants'] nineteen identified enterprise wallets . . . up to an amount not exceeding Plaintiff's proven damages." (Doc. 13 at 11.) Plaintiff does not identify which wallet or which specific asset within each wallet holds funds traceable to his $10,500 payment or the cryptocurrency assets he claims title to, as opposed to funds belonging to others, ordinary business operations, or unrelated transactions. Instead, he conclusively states that "[t]he proceeds of

Defendants' fraudulent conduct are specifically identifiable and traceable to the nineteen wallet addresses." (Doc. 16 at 36.) And while the FAC refers to an "accompanying Declaration, [demonstrating] continuous and independently verifiable public blockchain records showing the flow of funds from the initial fraudulent transactions to their current location," the Court cannot discern that from the record, which amount to a disorganized collection of exhibits that do not permit such a showing. *See Fleck v. Del-One Fed. Credit Union*, No. 3:25-cv-01048-SB, 2026 WL 867599, at *6 (D. Or. Mar. 30, 2026) ("[C]ourts are generally not required to sift through a self-represented litigant's allegations and stacks of exhibits or filings to tease out a valid claim.") (citing *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021)). And Plaintiff himself appears unable to discern the "flow of funds," which is presumably why he asks the Court to freeze all nineteen wallets rather than identifying which specific wallets or assets are actually traceable to his payment.

Without tracing the assets that Plaintiff claims title to, Plaintiff's request for a constructive trust amounts to treating Defendants' pool of assets as collateral for a money judgment. Plaintiff concedes as much in his request to freeze assets across several wallets but only "up to an amount not exceeding Plaintiff's proven damages." (Doc. 13 at 11); *see also United States v. BNS Inc.*, 858 F.2d 456, 464 (9th Cir. 1988) ("A preliminary injunction should be narrowly tailored to remedy the specific harm alleged."). *Grupo Mexicano* still bars preliminary injunctive relief under such circumstances, notwithstanding Plaintiff's attempt to couch his claims in terms that purport to invoke equitable relief. 527 U.S. at 333. The Court therefore finds that Plaintiff is unlikely to succeed on the merits insofar as he seeks a constructive trust, so he is not entitled to a temporary restraining order on that basis. Nor does any other equitable theory advanced by Plaintiff provide a basis to avoid *Grupo Mexicano*'s bar because every version of Plaintiff's request rests on the same defect: a request to freeze Defendants' assets across nineteen wallets that Plaintiff has not yet shown are actually tied to his own claimed interest.

The Court will deny Plaintiff's Renewed Ex Parte Motion for Temporary Restraining Order (Doc. 13).

## VI. MOTION FOR ALTERNATIVE SERVICE

Plaintiff moves for authorization to effect service of the summons and FAC via alternative methods of service, including by electronic mail and text message. (Doc. 6.)

Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that individuals may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . ." Fed. R. Civ. P. 4(e)(1). Arizona law enumerates several sufficient methods to serve individuals by:

> (1) delivering a copy of the summons and the pleading to that individual personally; (2) leaving a copy of each at that individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Ariz. R. Civ. P. 4.1(d). Corporations and other associations may be served "by delivering a copy of the summons and the pleading being served to a partner, an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Ariz R. Civ. P. 4.1(i). If a moving party shows service by those means is "impracticable," the Court may "order that service [] be accomplished in another manner." *Id.* 4.1(k)(1).

"Impracticable does not mean impossible, but rather that service would be 'extremely difficult or inconvenient.'" *Bank of New York Mellon v. Dodey*, 246 Ariz. 1, 10 (App. 2018) (quoting *Blair v. Burgener*, 226 Ariz. 213, 218 (Ct. App. 2010)). In *Blair v. Burgerener*, the Arizona Court of Appeals determined the standard of impracticability requires something less than the "due diligence" standard. 226 Ariz. at 218. ("[T]he showing for alternative service requires something less than a complete inability to serve the defendant because the defendant's current address is unknown or the defendant completely has avoided service of process."). Applying that standard, the court deemed personal service in that case to be impracticable because the plaintiff attempted

service at the defendants' place of business and residence at various times on five different days. *Id.* at 219. In addition, the court "approvingly cited a New York case on a similar service issue," in which "the New York court concluded that three attempts at service on three different days constituted sufficient efforts to warrant alternative means of service." *BMO Harris Bank, N.A. v. D.R.C. Invests., L.L.C.*, No. CV-13-1692-PHX-LOA, 2013 WL 4804482, at *4 (D. Ariz. Sep. 9, 2013) (citing *Blair*, 226 Ariz. at 218).

To demonstrate impracticability, Plaintiff points to a case in Maricopa County Superior Court, *Patterson v. AWP Gaming LLC, et al.*, Case No. CV2022-091502, in which the plaintiff obtained authorization to effect service by alternative means against the same defendants in this case. (Doc. 6 at 1.) But as shown by this Court's cited case law, impracticability is a case-specific showing tied to the moving party's own efforts to serve a defendant. Under *Blair* and its progeny, the inquiry turns on how many attempts were made, at what addresses, on what dates, and why the attempted methods proved impractical. *See Blair*, 226 Ariz. at 218-19; *BMO Harris Bank*, 2013 WL 4804482, at *4. That a different plaintiff, on a different record, persuaded the Maricopa County Superior Court to authorize alternative service in *Patterson* says nothing about whether personal service on the Defendants here is impractical. Plaintiff may not simply point to that case to demonstrate impracticability.

Plaintiff has not shown that service by traditional means is impracticable, so the Court will deny Plaintiff's Motion for Authorization of Alternative Service of Process (Doc. 6).

## VII. CONCLUSION

Accordingly,

**IT IS ORDERED** directing the Clerk of Court to strike Plaintiff's Notice of Supplemental Authority and Clarification of Relief Requested (Doc. 10) and Supplemental Memorandum in Support of Ex Parte Motion for Temporary Restraining Order (Doc. 18) from the record.

. . . .

**IT IS FURTHER ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** dismissing all claims and Defendants in Plaintiff's First Amended Complaint (Doc. 16), except as follows. Plaintiff may proceed on the following claims: breach of contract against AWP Gaming LLC only (Count IV); unjust enrichment against AWP Gaming LLC only (Count V); and conversion against AWP Gaming LLC only (Count VIII). Although the Court will dismiss Plaintiff's claim for alter ego liability (Count VII) insofar as it is plead as a standalone cause of action, Plaintiff may proceed on his claim as a derivative theory as to his other claims, but only to the extent he asserts that AWP Gaming LLC is the alter ego of Mr. Maxon. The Court will dismiss Plaintiff's claims for injunctive relief (Count X) and a constructive trust (Count XI) because they are pleaded as causes of action, but Plaintiff may pursue these claims as remedies.

**IT IS FURTHER ORDERED** that Plaintiff's Renewed Ex Parte Motion for Temporary Restraining Order (Doc. 13) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Authorization of Alternative Service of Process (Doc. 6) is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff must serve his First Amended Complaint (Doc. 16), the summons, and this Order on Defendants AWP Gaming LLC and Christopher Maxon no later than **September 23, 2026**.

Dated this 9th day of September, 2026.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge